Good morning. My name is Gary Huss. I'm counsel for the appellant, William Ray. Essentially, we've raised two issues in our papers. One is the error by the failure to give the unanimity instruction, and the second is an IOC claim. Obviously, if it wasn't wrong not to give the unanimity instruction, there isn't really an ineffective assistance of counsel. In my view, I think the focus should be on whether there was a conflict in the evidence as to whether this was one continuous course of conduct or not. Clearly, we have evidence that Mr. Ray made the statement during the transaction, I don't have any, and park it here and go with me, which is an indication that he was acting alone. Counsel, when that statement was made, he was not present, correct? Correct. He was not present. There's no reason for him to say we, because there's no we to talk about at that point. I agree, but for the same reason, we don't know what the true intentions of either of them were. They're both out there, and there's two ways of viewing that. He could have been acting alone, or it could have been a team effort. We also have a conflict in that the officer was allowed to testify that he thought it was a team effort, that it was one continuous course of conduct, yet Pee Wee came in and testified that it was not. So you have a conflict. The way I look at this is the unanimity instruction is close to as important as the beyond a reasonable doubt instruction. It's one of the foundational principles of our criminal system. The jury must be unanimous. And if there was a conflict in the evidence as to whether it was separate or a team effort, then the instruction should have been given. And the fact that defense counsel went along with the prosecutor doesn't help, and it doesn't help in a sense. The prosecutor's initial gut feeling to request it was a good judgment call on his part because he knew they were separate. There were two different separate acts, two different conversations going on up there. Then when he withdrew it, I think you have to ask yourself the question, what defense attorney, what reasonable benefit could come to Mr. Ray by his own attorney withdrawing a unanimity instruction? I can't think of any possible benefit. Can you please put my nose in Peewee's testimony? Because you just said that Peewee said really there were two separate transactions. Do we have that in the excerpts? And I'd like to read it if you have it easily available. I recall from reviewing the excerpts that there was reference to him testifying that he was not that he was he was not coordinating his efforts. But I can't give you a page in line reference at this point. I do recall that when he came up to the officers after the conversation with Mr. Ray, that Peewee said, what do you want to the officer? And that the officer had said at that point, I'm just looking to score a quarter, but I do not want to go to the corner, meaning I do not want to go to the corner with Mr. Ray. And it was at that point that Mr. Peewee said, we can get you some, which I think can be viewed two ways. It can be viewed as we're together on this or it could be viewed as, hey, I'm going to get involved in this. We'll make a new deal. I'll come together now separate in part from what was going on between you and Mr. Ray earlier. And that's that rendition is basically comes from the description of the officer as to what happened. Yes. I asked you a different question. And I guess I'm going to have to find it myself. You said that Peewee testified at trial that these were two separate transactions. And I was interested in maybe I misheard you. I think that's what I heard you say. I remember that from you from reviewing the record, but I just can't point to it right at this point. I'm sorry. We did testify. Yeah, I believe his name. That was Mr. Luthinicum. That was that's his actual name. Well, it's easier to remember Peewee, but that's neither here nor there. So to me, I think it's as simple. It really is as simple as that. Was there conflict in the evidence? If there was, then the instruction should have been given. And it either should have been given sua sponte by the court, much like a beyond a reasonable doubt instruction. And certainly his own defense attorney should not have allowed it to be withdrawn. Counsel, you stated your arguments almost as I would hear perhaps in the state court proceeding. This is habeas review, correct? Yes. Okay. You're ready for my question. What's your case, a Supreme Court precedent that was violated by the trial court's action or in this matter? I don't understand the question. Applying the standard, how was the admission of this evidence contrary to clearly established federal law as set forth in the Supreme Court decision? I can't answer that. All right. The declaration of the trial attorney says, Paragraph six, your site to it. But it says, I do not now recall the prosecutor's statement in closing that quote. I think we have at least two offers there. But I only have to show one close quote citing reporters transcript 298. Does that refresh your memory as to whether there was any testimony about there being two separate offers? No. That's not what you were referring to. No. And I wasn't trial counsel. No, I know you weren't. Okay. I think, though, that when we talk about if you're referring to the defendant's counsel, I thought the remarks that are referenced in excerpt four, Exhibit B, pages 21 to 23, I think are significant, where appellant trial counsel is apparently ‑‑ I think it's on page 22. I considered the statement of Mr. Lathenicum to Officer Wilson as separate and unassociated with Mr. Ray. There are not adequate reasons. I felt that his own counsel couldn't explain why he gave up that valuable right to the unanimous instruction. And I feel that that supports the ineffective assistance of counsel. To me, if you simply reflect, what possible benefit could Mr. Ray have received from abandoning that important principle? Really, it's his one shot, or it's a shot at possibly a hung jury or not being convicted. But why would any competent defense attorney give up the unanimity instruction? He might just as well give up the beyond reasonable doubt one, 290. Let's assume he was incompetent in giving it up. That gets you to the harmlessness question under Strickland. What's the harm? The harm is essentially that he gets convicted. And the problem with these kind of issues is we don't know what the jury was thinking. We know that they had before them a conflict in the evidence. He gets convicted. Since we don't know their thought process, it would be much like what would be the harm in not giving the beyond a reasonable doubt instruction? Now, you refer again to the conflict in the evidence. Do we sometimes we do and sometimes we don't. Do we have a transcript of the trial in the district court record in this case? I don't believe that I have. So if I'm trying to figure out what the conflict of the evidence is at trial, I can't do it. Because you haven't put or whoever was the trial lawyer in the district court didn't put it in the record. I agree. Were you the lawyer in Habeas in the federal district court or did you come only on appeal? No, I was appointed later. Was he counseled at the district court? I'm not sure what the transition was from the state court into the district court. I don't believe that trial counsel was assisting Mr. Ray at that point. I've got a different question. Was Mr. Ray represented by counsel in the federal Habeas petition in federal district court? I thought from excerpt four that he was in pro se. That's the indication. He starts out that way. That's how he finishes. This is not a trick question. I just don't know the answer. From all of the record that I've seen, he continued in pro se until the court decided to issue its order reflected in excerpt nine to certify it for appealability. Thank you. May it please the Court. Justin Riley on behalf of Respondent. I think as a preliminary matter, the court was looking for page 14 of appellant's opening brief, first full paragraph, short paragraph, Pee Wee testified at reporter's transcripts, 188, 192 to 194. I'm sorry, blue brief? Yeah, 14. 14, what line? They're not line, but it's the second full paragraph, short paragraph, three lines. At the very end of the paragraph is the site for where Pee Wee testified. Okay, testified at trial. Okay. And is RT, is that reporter's transcript? And is that part of the district court record? It should be. Oh, you don't know. The findings and recommendations cite to the RT, so I'm pretty sure it was. I would also like to point out on page, I'm sorry, Pee Wee was also convicted of page eight of the appellant's opening brief. Pee Wee admitted that he had many prior theft-related convictions, was a drug user, was addicted to cocaine base, and had consumed various narcotics on the day in question. Apparently, he was also fighting with the appellant. As an initial matter, appellant claims that the trial court erred in failing to sui sponte and struck the jury on unanimity. Appellant has failed to state a claim which entitles him to habeas relief because he has the burden to show constitutional error on habeas review, and he doesn't identify a federal constitutional right laid out by Supreme Court precedent as to the first claim. I didn't even see a Supreme Court case cited in the briefs with regard to that claim. Appellant's right to unanimity instruction was a state law right. The state court of appeal on direct appeal, direct review, determined that there was no reversible error in this regard. This forecloses federal review on the matter. In any event, any error would have been harmless as the acts in question formed a continuous course of conduct. Well, let me get at this one. Assuming that you're right, that there's no federal constitutional error as to the failure of the district judge to give the unanimity instruction, assuming that for the moment. Could I correct the Court just briefly? This was held in State trial court. District court didn't. Oh, I'm sorry. I misspoke. Of course, no. The conviction was, of course. There would be a duty by the district court to give a unanimity instruction. I'm sorry. I misspoke. You're quite correct. But assuming for the moment that there was no constitutional error on the failure on the Superior Court to instruct, nonetheless, you get to the same question under ineffective assistance of counsel. And that's why I laid it out in the brief. Assuming then that it's only a question of State law, but he might have been entitled to unanimity instruction under State law. That's why we both agreed to the matter. Would you assume – I don't ask you to concede. Okay. I ask you to assume that the unanimity instruction should have been given under State law. Okay. And that if it had been requested by his lawyer, it would have been given. Why is that not harmful under Strickland? That's a tough question because the State does a harmless error review in unanimity instructions by finding sort of a continuous course of conduct. The State Court of Appeal on direct review actually found this – didn't address whether or not it was error, but found that if it was error, it would have been harmless, and did so by finding that it was a continuous course of conduct. So in that regard, it's kind of tough to separate whether or not a unanimity instruction was required from harmless error analysis. But if I tried to do that and only focused on what sort of prejudice – it would be kind of tough. What sort of prejudice appellants suffered at trial, we don't know. It's speculation, I think. Well, but if there was – I mean, understandably, you're being asked to assume that there should have been a unanimity instruction. It would seem that if the conditions existed for that, then the prejudice is almost inherent in the nature of having a unanimity instruction. Make sure the jury doesn't come up with half of them convicting on Peewee's side of the ledger and half of them finding it based on Petitioner's side of the ledger. That seems to be the whole thrust of a unanimity instruction. So it would be pretty hard to say there wasn't. That's why it's tough to go into a harmless error analysis by assuming that a unanimity instruction was given. Here, the jury was basically faced with an all-or-nothing scenario. We had one officer testify to the 15-to-20-second conversation in which he started a conversation with appellant and ended the conversation with Peewee. Now, this conversation started with appellant. The jury found offering to sell drugs to the law enforcement officer and ending with Peewee. It's my position that he was reiterating that offer. Now, either the jury would have believed the officer or the jury would have believed the defendant in this case. There was no other scenario for the jury to enter into. But if they thought, you know, it doesn't really matter whether the officer has it exactly right or whether Peewee has it exactly right because, well, some of us think that Peewee was doing it and some of us think that the other guy was, that the Petitioner was doing it. So let's just convict them both. If that's what they thought, we've got a problem. Well, we also look to whether it was a, whether a reasonable juror would believe one and not the other. Now, we have one officer testifying to the events. Would a reasonable juror believe he was lying immediately into the conversation and telling the truth at the end of the conversation or vice versa?  A reasonable juror. Reasonable jurors disbelieve witnesses all the time. And for good reason, they disbelieve witnesses all the time. And also the, I'm sorry. Yes, it's true. And also the surrounding circumstances, appellant coming up to the, or waving down the officer, talking about cocaine base, offering to go with him down to the corner, procure the cocaine base, and Peewee coming up and basically reiterating the same offer, going down to the same corner, getting the same cocaine base, the circumstances and the police officer's testimony. But you've just summarized what was said in a different way from what I'm gathering from the blue brief Peewee says. I disagree. And I confess I have to get my hands on this transcript. I have not yet read what Peewee said. I disagree with the blue brief in many regards as its appellant's brief, but I guess I don't understand the question. Well, you summarized the evidence that left out what the blue brief says Peewee said. You summarized the evidence that, well, Peewee came up and said, yeah, come on down. We'll tell it to you. Well, that's what the officer said. The blue brief. Oh, what did you say Peewee said? I didn't say that Peewee, Peewee did testify at trial, and he denied, he made various claims. He admitted trying to sell drugs to the officer prior to trial. Then at trial, he testifies on behalf of the defendant to try to exonerate him after he pled and came up with a deal. As I pointed out, he had been convicted of several different offenses. He admitted that he was a frequent drug user, admitted that he was a drug, he was involved in drug sales. It's my position that the jury didn't believe him, and in their conviction basically said as much. Could you, I'm also a little troubled or handicapped by not having the reporter's transcript at hand, but I read what the, at least the declaration of trial counsel said, citing the reporter's transcript about the prosecution's close. Did you try the case? Were you the prosecutor? In this case, no, I didn't think so. Okay, so you're as handicapped maybe as I was. Do you know what the context is of the prosecutor having said, I think we have at least two offers, but I only have to show one? I did read the transcript prior, in preparation for this argument. I don't, I'm sure the justices have read many closing arguments. I didn't quite follow what he was trying to say. I don't know what was on his mind. In reading it, I took that the prosecution's argument was that this was a team sale of narcotics. He put on law enforcement expert testimony that I'm familiar with that. I know what the evidence is. So basically this was one transaction. And I took from that that the prosecution was trying to say, you know, if you believe that Pee Wee came over here and tried to sell drugs, Appellant was his teammate. And that's what he was there doing as well. Okay. And it's my position that that's a, at worst it's harmless because it was a continuous transaction and it was a team sale of narcotics. Unless there's any more questions, I think I'm out of time. Okay. Thank you very much. Thank you. I'm prepared to submit it. Okay. Thank you both for your argument. The case of Ray v. Lewis is now submitted for decision. The next case on the calendar is Roach v. Garcia.
judges: W. Fletcher, Fisher, Winmill